# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

KATRINA LOUISE K., )
          **Plaintiff,** )
           ) Case No. 18-CV-208-JFJ
v. )
ANDREW M. SAUL, )
**Commissioner of Social Security,** )
          **Defendant.** )

## OPINION AND ORDER

Plaintiff Katrina Louise K. seeks judicial review of the decision of the Commissioner of the Social Security Administration denying her claims for disability insurance benefits under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, and 1382c(a)(3). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. For reasons explained below, the Court reverses the Commissioner's decision denying benefits. Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

**I.      Standard of Review**

In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994)). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004). The Court must "meticulously examine the record as a whole,

including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan*, 399 F.3d at 1261 (citing *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). The Court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, the Commissioner's decision stands so long as it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.   Procedural History and ALJ's Decision

Plaintiff, then a 39-year-old female, protectively applied for Title II benefits on October 9, 2014, and filed for Title XVI benefits on October 28, 2014, alleging in both applications a disability onset date of May 15, 2014. R. 18, 248-258. Plaintiff met the insured status requirements of the Act through December 31, 2018. R. 19, 20. Plaintiff listed the conditions preventing her from working as depression with crying spells and suicidal thoughts; anxiety, including panic attacks and trouble sleeping; post-traumatic stress disorder ("PTSD"); and bipolar disorder with racing thoughts. R. 306. Plaintiff's claims for benefits were denied initially on January 29, 2015, and on reconsideration on March 13, 2015. R. 62-85; 88-111. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), and the ALJ held the hearing on December 14, 2016. R. 33-53. The ALJ issued a decision on December 23, 2016, finding at step five that Plaintiff was not disabled because she could perform other work. R. 15-28. The Appeals Council denied review, and Plaintiff appealed. R. 1-3; ECF No. 2.

The ALJ found that Plaintiff met the insured status requirements of the Act through December 31, 2018, and that she had not engaged in substantial gainful activity since her alleged onset date. R. 20. At step two, the ALJ found that Plaintiff's depression and anxiety were severe impairments but that Plaintiff's Hepatitis C and history of substance abuse were non-severe. At step

2

three, the ALJ found Plaintiff's impairments did not meet or medically equal any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ specifically discussed listing 12.04 (affective mood disorders), listing 12.06 (anxiety-related disorders), and listing 12.09 (substance addiction disorders), finding that Plaintiff had mild difficulties in activities of daily living; moderate difficulties in the two areas of (1) social functioning and (2) concentration, persistence, or pace; and no episodes of decompensation. R. 21.

The ALJ found Plaintiff had the following residual functional capacity ("RFC"):

> [T]o perform a full range of work at all exertional levels but with the following nonexertional limitations: She is limited to simple, repetitive tasks with the ability to relate to supervisors and co-workers only superficially. She cannot work with the public.

R. 22. In support of the RFC, the ALJ discussed Plaintiff's testimony regarding her mental symptoms; a third-party function report from Plaintiff's brother; Plaintiff's mental health treatment history; and opinion evidence from the state agency reviewers. R. 23-26.

At step four, the ALJ found Plaintiff could not perform her past relevant work. R. 27. At step five, based on the hypothetical posed to the VE and her responses, the ALJ found Plaintiff could perform the requirements of representative medium-exertion occupations such as janitor (SVP-2) and dishwasher (SVP-2). R. 28.

## III. Issues and Analysis

Plaintiff raises three allegations of error on appeal: (1) the ALJ erred in failing to develop the record in this case; (2) the ALJ's finding as to Plaintiff's RFC is erroneous; and (3) the decision was rendered by an ALJ whose appointment was invalid at the time he rendered his decision.[1]

---

[1] Neither party has urged the Court to decide the Appointments Clause issue as a threshold matter. In this case, it serves the interests of justice and efficiency to reach the Appointments Clause issue only if there are no other grounds for reversal. Because the Court finds no other grounds for reversal, the Court reaches the Appointments Clause issue in Part III.C.

## A. The ALJ Did Not Err by Declining to Order a Mental Consultative Exam

Plaintiff alleges that the ALJ erred by failing to develop the record. Specifically, Plaintiff contends the ALJ should have ordered a consultative examination ("CE") following the hearing. At the hearing, Plaintiff's counsel requested a mental CE of Plaintiff, but the ALJ refused the request, as noted in the decision. R. 18, 36, 52.

"'The ALJ has a basic obligation in every social security case to ensure that an adequate record is developed during the disability hearing consistent with the issues raised.'" *Cowan v. Astrue*, 552 F.3d 1182, 1187 (10th Cir. 2008) (quoting *Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359, 360-61 (10th Cir.1993)). The ALJ's duty "'is one of inquiry, ensuring that the ALJ is informed about facts relevant to his decision and learns the claimant's own version of those facts.'" *Id.* (quoting *Henrie*, 13 F.3d at 361). In satisfying this duty, the ALJ "does not have to exhaust every possible line of inquiry in an attempt to pursue every potential line of questioning"; instead, the "standard is one of reasonable good judgment." *Hawkins v. Chater*, 113 F.3d 1162, 1168 (10th Cir. 1997).

An ALJ may elect to develop the record by obtaining a CE. *See* 20 C.F.R. §§ 404.1519a(b), 416.919a(b) (explaining that "[w]e may purchase a [CE] to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim" and providing examples of when a CE may be ordered); 20 C.F.R. §§ 404.1512(b)(2), 416.912(b)(2) ("Generally, we will not request a [CE] until we have made every reasonable effort to obtain evidence from your own medical sources."). Generally, an ALJ has "broad latitude in ordering consultative examinations." *Hawkins*, 113 F.3d at 1166. The Tenth Circuit has stated that an "ALJ should order a [CE] when evidence in the record establishes the reasonable possibility of the existence of a disability and the result of the [CE] could reasonably be expected to be of material assistance in resolving the issue of disability." *Id.* at 1169. For example,

4

a CE "is often required" where (1) there is a direct conflict in the medical evidence requiring resolution, (2) the medical evidence in the record is inconclusive, or (3) additional tests are required to explain a diagnosis already contained in the record. *Id.* at 1166.

The Court finds the ALJ did not commit error by failing to obtain a mental CE to assess the extent of Plaintiff's limitations caused by her depression, anxiety, and PTSD. In the decision, the ALJ explained he refused Plaintiff's counsel's request for a CE "because the medical evidence is sufficient to arrive at decision." R. 18. Specifically, the agency psychologist reviewed the record and determined there was sufficient evidence to give an opinion on Plaintiff's RFC. *Id.* In addition, the ALJ noted the record contained numerous observations since Plaintiff's alleged onset date from which an appropriate RFC could be determined. *Id.*

Plaintiff cites to no evidence that would demonstrate the type of material inconsistency that necessitates a CE. Nor are the medical records incomplete or inconclusive, as noted by the ALJ himself in the decision. R. 18 (citing R. 61, 74-85, 88-111, 475-552). *See* 20 C.F.R. §§ 404.1520b(b)(2)(iii), 416.920b(b)(2)(iii) (explaining that the ALJ may order a CE if the evidence is inconsistent or insufficient to reach a conclusion about disability). Contrary to Plaintiff's arguments, the ALJ did not need a specific RFC opinion from a CE or other medical professional to assess Plaintiff's functional limitations. *See Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (explaining that "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question"); *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004) ("[T]he ALJ, not a physician, is charged with determining a claimant's RFC from the medical record."); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (explaining that, while an ALJ considers medical opinions in assessing the nature and severity of a claimant's impairments, the final responsibility for determining RFC is reserved to the ALJ).

5

The burden to fully develop the record was met in this case, and the ALJ had sufficient information to determine Plaintiff's RFC based on treatment records, agency doctors' opinions, and other non-medical evidence. *See Cowan*, 552 F.3d at 1187 (finding "no need" to develop record with CE because "sufficient information" existed for ALJ to make disability determination).

### B. Plaintiff's Mental RFC is Supported by Substantial Evidence

Plaintiff contends the "simple work" limitation in the RFC is not supported by substantial evidence and should have been "more severe," because Plaintiff "leads a sheltered [sic] and rarely leaves her home because of severe anxiety." ECF No. 12 at 11. Plaintiff complains that the ALJ's conclusions appear to be "boilerplate" statements without legal analysis.

The Court concludes that the mental RCF is supported by substantial evidence. By incorporating a "simple" work limitation with reduced social interaction into the RFC, the ALJ accounted for Plaintiff's complaints of anxiety around others, as well as medical evidence supporting a limitation to simple, repetitive tasks. R. 26. In particular, the ALJ noted that mental status examinations revealed Plaintiff's appearance was routinely appropriate; she remained oriented to person, place, and time; she remained cooperative despite complaints of anxiety and tearfulness; there were no signs of psychosis; her intelligence was documented as average; thought processes remained logical despite complaints of difficulty with concentration; and medication evaluation was not performed in 2016 after a break in treatment, despite a favorable response to prescribed medication in 2014 and 2015. R. 26. *See* R. 403-406, 410, 412, 416, 419, 432-433, 438-439, 443-444, 446, 448, 483-484, 490, 492-493, 502, 504-552. The ALJ gave some weight to the opinions of the agency psychological reviewers, William H. Farrell, Ph.D., and James Sturgis, Ph.D., but the ALJ assigned greater limitations than those reviewers opined were appropriate for Plaintiff. R. 26. *See* R. 67-71, 79-83, 93-97, 105-109. The ALJ's statements are far more than

mere "boilerplate," and the Court can discern the ALJ's reasoning, which is enough to satisfy the "substantial evidence" standard. *See Davis v. Erdmann*, 607 F.2d 917, 919 n.1 (10th Cir. 1979).

Plaintiff argues the ALJ failed to take into account Plaintiff's structured life style as evidence of greater mental impairments. Plaintiff cites Listing 12.00(E), which states that a claimant who has "chronic organic, psychotic, and affective disorders" "may commonly have [her] life structured in such a way as to minimize [her] stress and reduce [her] symptoms and signs," which may demonstrate greater impairment for work than the claimant's symptoms and signs would indicate. In this regard, Plaintiff states that she "rarely leaves her home." ECF No. 12 at 14. However, the ALJ addressed the structure of Plaintiff's lifestyle, including her social isolation, in determining Plaintiff's RFC. R. 23-26. In assessing Plaintiff's brother's third-party statements, the ALJ noted that his allegation of Plaintiff's inability to leave her house or socialize with others was inconsistent with the medical evidence, which revealed largely normal mental status examination, failure to obtain a medication evaluation in 2016 despite having past favorable results from medication, and sporadic outpatient treatment for her mental issues. R. 23. *See* R. 475-552. Even if the evidence could have supported a finding of greater mental restrictions, the issue for judicial review is whether the ALJ's decision is supported by substantial evidence, not whether Plaintiff's position is supported by substantial evidence. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); 42 U.S.C. § 405(g). The ALJ's reasoning is consistent with and supported by the record.

Plaintiff also contends the ALJ erroneously ignored Plaintiff's Global Assessment of Functioning ("GAF") by various treating sources. Plaintiff's argument fails. The ALJ noted findings from Plaintiff's treating sources of GAF scores between 42 and 50.[2] R. 24-25. *See* R. 433,

---

[2] GAF is a subjective determination, based on a scale of 100 to 1, of the clinician's judgment of the patient's overall level of functioning. *Langley v. Barnhart,* 373 F.3d 1116, 1122 n. 3 (10th Cir. 2004) (quotation omitted). The American Psychiatric Association's *Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 2000) explains that a GAF score between 41 and 50 indicates "[s]erious symptoms . . . [or] any serious impairment in social, occupational, or school functioning

7

435, 439, 444, 476, 479, 484, 547. Contrary to Plaintiff's argument, the ALJ was not required to expressly weigh Plaintiff's GAF scores. Rather, a GAF score is "a piece of evidence to be considered with the rest of the record." *Petree v. Astrue*, 260 F. App'x 33, 42 (10th Cir. 2007). *See Lee*, 117 F. App'x at 678 ("Standing alone, a low GAF score does not necessarily evidence an impairment seriously interfering with a claimant's ability to work.") (citation omitted). "While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy." *Kearns*, 633 F. App'x at 682 (quotations omitted). Therefore, an ALJ's failure to "expressly recite or reconcile" a low GAF score "does not constitute error or take away from the substantial evidence supporting the ALJ's decision." *Id. See Zachary v. Barnhart*, 94 F. App'x 817, 819 (10th Cir. 2004) (ALJ not required to discuss GAF rating of 45).

The GAF scores did not include explanations for the ratings given, and they did not indicate that Plaintiff was unable to work. Accordingly, these lower GAF scores do not undermine the ALJ's conclusion regarding the seriousness of Plaintiff's mental impairments or ability to work. In addition, the ALJ's RFC reasonably accounted for any work-related mental limitations the GAF scores might have indicated, including limited social interaction and simple, repetitive tasks. R. 22. *See Davison v. Colvin*, 596 F. App'x 675, 681-82 (10th Cir. 2014) (finding ALJ's RFC determination supported by substantial evidence despite claimant's low GAF scores, where ALJ noted lower GAF scores and accounted for work-related mental limitations in RFC, including limitations of only occasional work interaction with supervisors and co-workers, no interaction with public, and simple, repetitive tasks);

---

(e.g., no friends, inability to keep a job)." *Lee v. Barnhart*, 117 F. App'x 674, 678 (10th Cir. 2004). In the most recent edition of the manual, the GAF score was dropped "'for several reasons, including its conceptual lack of clarity . . . and questionable psychometrics in routine practice.'" *Kearns v. Colvin*, 633 F. App'x 678, 681 n.2 (10th Cir. 2015) (quoting Am. Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 16 (5th ed. 2013)).

Finally, Plaintiff argues the ALJ erred by failing to either follow or discredit the VE's testimony in response to hypothetical questions that included limitations greater than those adopted into the RFC. In particular, the ALJ queried about a hypothetical person who would be off-task 25% of the work day or who would miss work at least three times per month due to mental impairments, and the VE responded that no competitive work would be available for such a person. R. 51-52. Plaintiff's argument is without merit. There is no requirement that the ALJ exhaustively analyze the VE's testimony regarding limitations that the ALJ ultimately does not accept into the RFC. *See Clifton v. Chater*, 79 F.3d 1007, 1009-1010 (10th Cir. 1998) (ALJ is not required to discuss every piece of evidence). To the contrary, a VE's testimony may provide substantial evidence to support an ALJ's findings regarding the jobs a claimant can perform *only* where the hypothetical question "reflect[s] with precision all of [claimant's] impairments" and limitations that are "borne out by the evidentiary record." *Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996).

Moreover, "[a]n ALJ is not bound by VE testimony in response to a hypothetical that fails to set forth only those impairments the ALJ has accepted as true." *Ruth v. Astrue*, 369 F. App'x 929, 931 (10th Cir. 2010) (citing *Talley v. Sullivan,* 908 F.2d 585, 588 (10th Cir.1990)). "By posing a particular hypothetical, an ALJ does not confine herself to making an RFC determination mirroring the hypothetical limitations." *Id.* If this were the case, then the ALJ would be precluded from posing more than one hypothetical. *See id.* at 931 n.2. Accordingly, Plaintiff's argument fails.

### C. Plaintiff Timely Raised the Appointments Clause Challenge

For purposes of this motion, the Commissioner concedes that the ALJ who decided Plaintiff's case was not validly appointed under the Appointments Clause of the U.S. Constitution. The Commissioner only disputes whether Plaintiff's challenge was timely.

"[O]ne who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case is entitled to relief." *Lucia v. S.E.C.*, __ U.S. ___, 138 S. Ct. 2044,

2055 (2018) (internal quotations omitted). In *Lucia*, the plaintiff raised the challenge "before the [Securities and Exchange Commission], and continued pressing that claim in the Court of Appeals and this Court." *Id.* Seizing on this language, the Commissioner argues Plaintiff's challenge is not "timely," because it was not made "at any point in the administrative proceedings." ECF No. 16 at 7. However, as recently made clear by the Tenth Circuit, "underlying securities laws expressly require issue exhaustion." *Malouf v. S.E.C.*, 933 F.3d 1248, 1256 (10th Cir. 2019) (holding that Appointments Clause challenge was forfeited due to failure to comply with mandatory exhaustion requirement). In contrast, no Social Security laws or regulations require issue exhaustion. *Sims v. Apfel*, 530 U.S. 103, 108 (2000) (explaining that, although statutes or agency regulations commonly require issue exhaustion in administrative appeals, no statute or SSA regulations do so). This has not changed in the nineteen years following *Sims*. Therefore, *Lucia* does not clearly or directly answer the timeliness question in the Social Security context. *See Sims*, 530 U.S. at 109-10 (explaining that, in absence of statute or regulation, courts must carefully consider type of agency proceedings before requiring issue exhaustion).

The question presented is whether a Social Security claimant must exhaust the Appointments Clause issue before the ALJ in order to raise it on appeal to a district court.[3] No circuit court has reached this precise question. Most lower courts addressing the question have held that the Appointments Clause issue is forfeited if not raised. *See, e.g., Fortin v. Comm'r of Social Security*, 372 F. Supp. 3d 558, 567 (E.D. Mich. 2019) (holding that Appointments Clause challenge was forfeited because not raised before the ALJ and providing thorough explanation of both sides of issue) (string-citing twelve cases supporting majority position). A minority of courts, employing varying rationales, have held that an Appointments Clause challenge may be raised for the first time

---

[3] As explained below, Plaintiff was not required to exhaust the Appointments Clause issue before the Appeals Council in order to preserve it. *See Sims*, 530 U.S. at 112. The Commissioner's argument only succeeds, therefore, if Plaintiff was required to exhaust the issue before the ALJ.

before the district court. *See, e.g., Kellett v. Berryhill*, No. CV 18-4757, 2019 WL 2339968, at *7 (E.D. Pa. June 3, 2019) (relying on *Sims*' reasoning and "futility of objecting before an ALJ who was powerless to decide a constitutional question"); *Bradshaw v. Berryhill*, 372 F. Supp. 3d 349, 352-362 (E.D.N.C. 2019) (relying on *Sims*' reasoning; separation of powers concerns; reluctance to apply exhaustion requirements to constitutional issues; and courts being "poorly equipped" to fashion an issue-exhaustion requirement for SSA proceedings); *Bizarre v. Berryhill*, 364 F. Supp. 3d 418, 420-26 (M.D. Pa. 2019) (limiting rationale to failure to exhaust constitutional issues and issuing alternative holding that, even if forfeited, court would exercise discretion to excuse failure to exhaust). Within the Tenth Circuit, courts are split. *Compare, e.g., Pearson v. Berryhill*, No. 17-4031-SAC, 2018 WL 6436092 (D. Kan. Dec. 7, 2018) (issue forfeited), *with Kim L. M. v. Saul*, No. 18-CV-418-FHM, 2019 WL 3318112, at *6 (N.D. Okla. July 24, 2019) (issue not forfeited) (holding that *Sims*' reasoning logically extends to other steps in the SSA process).[4]

The Court joins the minority position and holds that a social security claimant does not forfeit an Appointments Clause challenge by failing to exhaust the issue before the ALJ. First, this Court can discern no principled basis for distinguishing *Sims* from the instant case. In *Sims*, the Court held that that a claimant need not exhaust issues in a request for review by the Social Security Appeals Council in order to preserve issues for appeal to a district court. *Sims*, 530 U.S. at 112. Although the Court declined to reach the question of "whether a claimant must exhaust issues before the ALJ," *id.* at 107, the underlying reasoning in *Sims* applies to the entire Social Security process.

---

[4] The Commissioner appealed the *Kim L.M.* decision to the Tenth Circuit, and it is currently pending on appeal. Neither party moved the Court to stay this decision pending resolution of that appeal.

11

Writing for the Court, Justice Thomas first explained that the rationale for requiring issue exhaustion is "much weaker" when the "administrative proceeding is not adversarial." *Id.* at 110.[5] Writing for a plurality, he reasoned that the "differences between courts and agencies are nowhere more pronounced than in *Social Security proceedings*" and that "*Social Security proceedings* are inquisitorial rather than adversarial." *Id.* at 110-11 (emphasis added). The plurality further reasoned: "It is *the ALJ*'s duty to investigate the facts and develop the arguments both for and against granting benefits . . . and the Council's review is *similarly broad*." *Id.* at 110-11 (emphasis added). In concluding that the analogy to judicial proceedings is at is weakest in the Social Security context, the plurality explained that "[t]he Council, not the claimant, has primary responsibility for identifying and developing the issues." *Id.* at 112. One could easily substitute "the ALJ" for the "Council" in the preceding sentence. The plurality also explained that SSA regulations make "quite clear" that the entire "SSA," not merely the Appeals Council, conducts its review in a nonadversarial and informal way. *Id.* at 111. Further, like the Appeals Council forms, the ALJ-level forms also require claimants to provide only a minimal amount of information, indicating the ALJ does not depend significantly on claimants to identify issues for review. *See Bradshaw*, 372 F. Supp. 3d at 356-57 (explaining similarity of requirements in forms). The overall reasoning in *Sims* indicates that the SSA regulatory scheme cannot be parsed into adversarial and non-adversarial stages for purposes of issue exhaustion.[6] *But see Marilyn R. v. Saul*, No. 18-CV-4098, 2019 WL 4389052, at

---

[5] *Sims* is a plurality opinion, with Parts I and II-A garnering five votes and Part I-B garnering only four.

[6] The law review article cited by the *Sims* plurality does not distinguish between the two levels of review and argues against any issue-exhaustion requirement in Social Security cases. *See* Jon C. Dubin, *Torquemada Meets Kafka: The Misapplication of the Issue Exhaustion Doctrine to Inquisitorial Administrative Proceedings*, 97 Colum. L. Rev. 1289, 1341-42 (1997) (reasoning that "issue exhaustion is doctrinally and functionally incompatible with the SSA's inquisitorial model and operating reality" and that "courts should reject the doctrine's application to SSA proceedings"). That author reasoned that "[t]he degree of agency judicialization required to justify issue exhaustion would undermine the mass justice efficiency of the SSA's inquisitorial model, place substantial

*4 (C.D. Ill. Sept. 13, 2019) (reasoning that claimants "have more responsibility for identifying the issues" at the ALJ level and that the ALJ level "is more adversarial").

Second, courts are not equipped to design a fair, well-considered issue-exhaustion requirement for Social Security proceedings. *See Bradshaw*, 372 F. Supp. 3d at 360. In this case, the Commissioner's arguments are not limited to the Appointments Clause context. *See* ECF No. 16 at 10 (arguing that courts should find forfeiture for any and all "arguments [a claimant] had not presented to the ALJ"). Yet as explained in *Bradshaw*, any judicially imposed issue-exhaustion requirement implicates several considerations: (1) the precise definition of "issue" or "argument"; (2) whether there should be an exception for constitutional issues;[7] (3) whether it should apply to all claimants or only those represented by counsel; and (4) whether failure to raise is an absolute bar or whether there are exceptions for newly discovered evidence. *Bradshaw*, 372 F. Supp. 3d at 360-61. Further, the exhaustion requirement requested by the Commissioner would impose an exhaustion requirement only at the ALJ level, and not at the subsequent Appeals Council level. *See Kim L.M.*, 2019 WL 3318112, at *6. It seems illogical to require exhaustion before the ALJ, but then excuse exhaustion before the final level of agency review. In short, the Court is wary of injecting an imprecise issue-exhaustion requirement into the complex and heavily regulated Social

---

strain on an already overburdened and dysfunctional adjudicative bureaucracy, and still fail to protect the judicial review rights of claimants lacking counsel in agency proceedings." *Id.*

[7] Some courts in the minority have found the constitutional nature of the question to weigh against forfeiture, essentially because courts should be most reluctant to relinquish their ability to decide constitutional questions. *See Bradshaw*, 372 F. Supp. 3d at 362; *Bizarre*, 364 F. Supp. 3d at 424. Some courts in the majority have found this nature to weigh in favor of forfeiture, because constitutional issues are not part of the typical "inquisitorial process." *See Marilyn R.*, 2019 WL 4389052, at *5 (reasoning that ALJ has no occasion to identify an Appointments Clause issue unless identified by the claimant); *Fortin*, 372 F. Supp. 3d at 565 (reasoning that where "the challenge is to the structural integrity of the process itself, the adversarial nature of the litigation reemerges").

13

Security scheme, particularly where the Supreme Court failed to do so for the highest level of agency review.

Finally, language in Tenth Circuit law favors the minority position. In *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (emphasis added), the Tenth Circuit stated:

> Indeed, there is nothing in the record before us to indicate that the conflict was raised until the district court proceeding that commenced two years after the ALJ hearing. The Supreme Court has ruled, however, that a plaintiff challenging a denial of disability benefits under 42 U.S.C. § 405(g) *need not preserve issues in the proceedings before the Commissioner or her delegates*. See Sims v. Apfel, 530 U.S. 103, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000).

The Commissioner argues this holding is limited to issues that an ALJ has "an affirmative duty to address," such as conflicts between vocational expert testimony and the Dictionary of Occupational Titles. ECF No. 16 at 13. The Court agrees that the challenged issue is distinguishable, and the Tenth Circuit does not appear to have meaningfully considered whether *Sims* extends to the ALJ-level of review. But there does not appear to be any other published Tenth Circuit decision limiting this language in *Hackett* or reaching a contrary result. *Cf. Shaibi v. Berryhill*, 883 F.3d 1102, 1109-10 (9th Cir. 2018) (imposing issue-exhaustion requirement at ALJ-level when claimants are represented by counsel). Accordingly, the most relevant published decision in the Tenth Circuit counsels against a finding of forfeiture.

### IV. Conclusion

Plaintiff did not forfeit her Appointments Clause by failing to exhaust the issue before the ALJ. The Commissioner does not dispute that the ALJ was not properly appointed under the Appointments Clause of the U.S. Constitution. Accordingly, the ALJ's decision is **REVERSED** and the case is **REMANDED** for further proceedings before a constitutionally appointed ALJ.[8] All other issues presented on appeal are **AFFIRMED.**

---

[8] The proper remedy for an invalidly appointed ALJ is a new hearing before a properly appointed ALJ. *See Lucia*, 138 S. Ct. at 2055.

**SO ORDERED** this 30th day of September, 2019.

**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**